Good morning. May it please the Court, Hovhannes Marguerian appearing on behalf of plaintiff-appellant Norik Barakezyan. Your Honors, this case is arising from, well, this was a filing of a class action on behalf of Norik Barakezyan and all others similarly situated who purchased or leased a BMW M-type vehicle, having an optional equipment of ceramic brakes. These ceramic brakes are high-performance brakes. They're designed for track use mainly, and they cost $8,000 to $9,000. They're an extra. These are considered like an extra special brake kind of thing?  And when you say track use, what does that mean? On racetracks. Racetracks. Yes. So, okay. And they're marketed just as an extra option. Of course, they're racetrack brakes, but these cars are in the showrooms with these brakes on. They're very large. They're very pretty. They're yellow. And if you go in and you're looking to buy a high-end car, they will pitch you the car with those brakes saying, well, these are great brakes, and they look great, and, you know, if you have the money, you should definitely get these brakes. So they're sold just like any other option. Even if you have no intention of going on a track? Yes, Your Honor. You're just squirreling around a truck. Yes. Because most people buying these cars, they're buying them just because they have the money, and they like the looks and so forth. So the cars are $130,000, $150,000 cars. So someone goes in. But they don't want them to make noises and pop and squeak and do all those things. Right. There's no discussion of noise at the time of sale. You go in, and just like they show you, you know, the interior seats are red, and the top comes up and down in 30 seconds. They also tell you, well, these brakes are great brakes, and they cost $9,000, and that's it. In this case, our client purchased the car. Well, he leased the car. He used his son to help him research the car. The son went online, researched everything about the car, and then they went to the dealership and leased this car. At the time of leasing it, nobody discussed the brake noise with them. They discussed all the options that this car does include these brakes, but no discussion of the noise. He leases the car, and then shortly after, he starts hearing the noise, and repeatedly he brings it back to the dealership. And the dealership tells him that these brakes are fine, they're functioning as designed, and there's nothing wrong with them. And sometimes they don't document the visits. Other times they document the visits. And this is quite common at the dealerships with other class representatives as well. Throughout the complaint, we've cited several complaints from other consumers who bought the cars, and at various times they learned of this defect. So may I just ask you a question kind of to cut to the chase on the warranty issue on manufacturing defects looking at California law? It seems that you can have two kinds of defective products. You can have either one that differs from the intended result, or it differs from other essentially identical units of the same product line. Yes. So which one of those? We are arguing both in the complaint. So we are allowed at this stage to argue competing causes of action. So we are arguing both in the complaint. So that goes to the express warranty issue where in the lower court ruled that because we are arguing a manufacturing defect – no, I'm sorry. Because we're arguing a design defect, the court ruled that the manufacturing defect couldn't stand and that the express warranty couldn't stand because we couldn't argue one versus the other. In reality, yes, we are arguing a design defect that says essentially – So can I just, as you go on, because I'm just trying to pinpoint this. So now going to the complaint, which of the allegations cover each of these kinds of defective products? So the first breach of implied warranty claim and the second cause of action – You're looking at the Third Amendment end of the complaint, yes? Yes. Yes. And the second cause of action, breach of implied warranty under Song-Beverly and Civil Code – Well, actually, all three of the first three are regarding the implied warranty. So the argument is that in the factual allegations, we've alleged that the vehicles manifest the defect in various forms and shapes. In other words, one vehicle starts having noise at 100 miles, the other one at 2,000 miles. Some vehicles make excessive noise, while others make a different kind of screeching noise and so forth. And the argument there is that under Baker and Horvath, I believe, these allegations amount to a manufacturing defect, basically saying the brakes are defective, but in various ways. So one car was produced in a fashion where the brakes make noise at 5,000 miles when it's cold outside. The other one produces noise when it's at 100 miles and it's warm outside. So these go – Those are the differential performance of the same product, in your view? Yes. Yes. And that shows that – that's been pled previously to show that this is a manufacturing defect, that there is a variety of defects among the cars, which is why – Is that in your – that's in your Second Amendment complaint? I believe that's in the – Is it also in your third? It's in the third, I'm sure. I'm not sure if it was in the second. Okay. But it is in the third complaint. Okay. I mean, we alleged that initially as well, but just we didn't focus in on that as the reason for the express warranty violation. But then when they filed their motions, we realized we need to pinpoint that as a reason. And so that's how we meet the requirements for the express warranty. And, again, these two can be competing, the express warranty and the implied warranty, we can argue. They can be alternatives. I'm sorry. Yes, they can be applied as alternatives. So that's our basis for the appeal on the express warranty. The other one, which is I find the UCL fraud violation to be the key to the case, because basically what we're saying is the manufacturer produced this component and it didn't have to be the brakes, it could be something else, but something that makes noise and it's interfering with the use. And people at the BMW and the BMW in Germany and BMW M, which is the division of BMW that makes these cars, they all knew, they all tested this car, they knew it before releasing the car, that the noise occurs and it's excessive, and they concealed it. To have the UCL fraud violation, we have to prove failure to disclose exclusive knowledge, something that's of exclusive knowledge. This is a factual question. BMW argues that there was no exclusive knowledge. Well, it's a matter of fact that needs to be decided by the jury. The second element is active concealment. The lower court ruled that we have pled sufficiently when, what, and how it was actively concealed. They knew the defect. They did not disclose it. The description of the brakes, in my opinion, should say high-performance noisy brakes. Then you would have disclosure. But if it says high-performance brakes, then you don't have proper disclosure. Okay, can I ask you, so what's the safety hazard that's created? So the safety hazard is in the lower argument. But the main thing is, number one, we do not have to have a safety hazard, because if we argue that during the warranty period we have to have safety hazard, that means manufacturers can produce radios, glove boxes, hand rests, and everything, and it all can be defective, and they can know it, and they can produce it, and next week it breaks down, and there's no UCL violation. Although there was fraud, they concealed it. And, well, it's not a safety issue, so too bad, because that's their position right now. But we do have a safety argument. The noise is very loud, and it distracts. It distracts the driver and distracts the third-party people around the car when you're driving this car. So we've pleaded. Now, a jury might find that it's not at the level of being unsafe, but that's for the jury to decide. We've done our job in terms of pleading to the extent that there is a safety concern. And then the second part is we have to plead a nexus between the defect and the safety. Well, the nexus is that the brakes make the noise, which make you worried, and then you overreact, you oversteer, or you overbrake, or you push the gas pedal, or you let go of the brake because you didn't know what's going on. I guess your argument is it doesn't need to be as bad as a sunroof with papers flying out the ceiling and that sort of thing. Yes. Well, we don't know, is it as bad or is it worse? Because let's say you're driving, and you hit the brakes, and then you hear this very loud noise, and you're scared, and you let go of the brake because you think something's wrong. Maybe you're not supposed to be pushing, but in reality, you should be pushing the brakes, and then you hit the car in front of you because you overreacted. That's all a factual issue, then. Right. It's all factual. And is there any evidence of that having occurred? Well, we have allegations that the people, our client was driving, and people around him, like valet drivers and other people, would turn. They would get scared, thinking there's an accident happening. He would himself, you know, initially. I suppose when you're driving initially, you don't know, so you react to it differently. After a few months, you know your car is making this noise, but you still have this hesitation because you're not sure what's going to happen. So I guess your answer is no. Well, we have what I said. You anticipate something, but nothing has occurred. Nothing in terms of an accident? No, an accident has not occurred. But this was a dismissal, probably six. Yes. On the papers in chambers. Yes. By this court, just like the last case we heard. Yes. So no facts have actually been developed in this case at all. No. No facts. And that's our main argument. Let the case fail on the facts. Let the jury decide. But it's not proper to do this on the 12th. Or the summary judgment. Yes. Yes. After discovery. Yes. Yes, absolutely, whatever may come out of that. So that's our main argument on the UCL fraud claim. Similarly, on the UCL unlawful claim, we need to show a violation of another law. If we prove breach of the express warranty or the implied warranty, then we could piggyback on that and have a UCL unlawful claim. And then the UCL unfairness claim, we have two alternative arguments. One is the public policy of fairness, that it's not fair for BMW to conceal something and sell and make $8,000, $9,000. The other competing way of assessing unfairness under UCL is the balancing harm versus the benefit. The harm is our clients are paying $8,000, $9,000 for an option that they don't like. Once they use it, they find out what comes with that option. They refuse the repair. They refuse documentation of their concerns a lot of times. And if they're trying to sell the car later on, they have to discount the car. Because if you're being honest, like you should be, then you tell the guy this is a car with XYZ and it makes excessive noise. Do you allege that they refuse to take the brakes off and give you the money back? Yes, they refuse any remedy. Occasionally, they will replace the brakes, but then after a few miles, the noise comes back. Same kind of brakes? Same kind of brakes, yes. So once you have these kind of brakes on the car, can you get the what I'll call normal brakes back? You can. You can get normal brakes, but then you're losing $8,000, $9,000. And the normal brakes, I presume, cost $1,000 or $2,000, whatever the cost is. It's much lower. So you're throwing away $7,000, $8,000. I think the confusion in the lower court was that the fight is over noise. So it's very easy to just look at the factual and to presume, well, there's noise. How bad could it really be? And then start making factual rulings, which is what happened. Rather than saying, let's think of this as just a defective component. It's not the brakes. It's just another. The radio. Every two minutes, your radio cranks up and starts making loud noise. Is that normal? It's not normal. So let the jury decide what the damages are. Don't dismiss it on a 12B6. So this, I think I've covered the UCL, the three prongs of the UCL. In terms of the on-merchant ability claim that we had, the implied warranty, under that there's two elements we have to meet. The product must pass without objection in the trade. This is a factual issue. Does the product perform or is it of such kind that within the trade, will consumers feel that it's functioning properly? Will other experts feel that it's functioning properly? Again, it's not a 12B6 topic. And we have pled in the complaint that clients, consumers, class members, do not like it. We've also pled that other manufacturers don't think this is appropriate. Other brands have ceramic brakes, which do not make this type of noise. They make other small, minor noise, but other brands have different brakes. So it's not necessarily a requirement for the noise to be there. And then the second element is, is this car fit for ordinary purpose? The standard of review is not whether the car can take you from point A to point B. The standard is, is it within the parameters of your expectations for ordinary purpose of driving? I mean, would it be okay if your radio came on every two minutes and started blasting? No, it's not fit for ordinary use. So same thing here. The brakes should not make this loud and obnoxious and ear-popping noise. We didn't go this far, but I was even considering hiring an ear expert to present testimony down the road to say if it damages the ear because of the pitch and the noise. And I don't know. Maybe it does. You want to reserve some time? You're kind of winding down here. You have 15 seconds left. This is all I had, Your Honors. All right. Thank you. Thank you. Yes. Good morning. May it please the Court. Jeffrey Miller, Lewis, Brisbois, Biscard, and Smith on behalf of Defendant Annapoli BMW of North America. I'd like to address basically the three arguments that we just heard, one relating to the express warranty, the second, the implied warranty of mercantility, and finally the fraud-based claims based under the unfair competition law. But before I get into that, I think one of the important attributes of this case that permeates, and I know it played a very significant role to the District Court, there are unusual circumstances with this case factually. The first one is that there's never been a characteristic or an allegation that the brakes failed to perform. They are fully functional. There's no allegation that they couldn't stop. In other words, this is a situation where essentially the brakes did what they were supposed to do. Second, there has never been an allegation of intentional misrepresentation. Counsel is talking about an omission or a duty to disclose, but never has there been a statement that there was a misrepresentation. And in fact, the duty to disclose is a very strange animal here because it's undisputed that there was a disclosure in the actual Owner's Manual. And third, and the counsel did refer to this, these are not normal brakes. That's one thing we can all agree on. These are specialty brakes. They're high-performance carbon ceramic brakes. They are made for racetracks, but they're made for very, very high-intensity speed and then stopping fast. It causes friction. It causes heat. I don't understand why they're on regular BMWs. Excuse me, Your Honor? I don't understand why they're on regular BMWs at all. It's an option. They come standard with standard brakes. It's an option that can be chosen by the individual. So it's like a sunroof. You can get one or you cannot get one. That is correct. But if you get one, then you would like it to perform as a brake. You would like it to perform as the brakes are supposed to perform, and that's the real issue that we have here. But how do we know? I mean, that seems to me to be we could argue about that, but if there's an allegation that it's not performing correctly and that they don't all perform the same and it doesn't perform to the intended design, why isn't that summary judgment matter? Well, Your Honor, I think especially when we're looking at this allegation of the express warranty, I mean we have to determine and take a hard look at what is the difference between a manufacturing design and a design defect itself. What the warranties always cover is manufacturing defects in materials and workmanship. What we have here is a classic design defect. The allegation is not this one car has squeaky brakes and it's not fitting in with how they should be. The allegation is all of the ceramic brakes in these models are loud. That is a classic design defect, which takes it out of express warranty. The gravamen of the complaint is very, very clear here. Well, let me just ask you, as I heard the argument in reading the complaint, it's that, in fact, it's not that there's a design defect with all of them. It's that the disparate performance among the brakes puts you into that difference from identical product units. That's the allegation, as I understand it. I think the gravamen, Your Honor, essentially is really that these ceramic brakes of this form, these materials that are being used, when they are applied then to these models, all of the vehicles involved have these high-pitched sounds. The real allegations, especially when you look at, like, the First Amendment complaint, for example, originally. Let's look at the Third Amendment. Right, right. If we look at the Third Amendment. Everyone got a little smarter as we went along. I was about to make that comment, and you are correct, because those allegations of inherent defects causing loud noises disappeared amazingly as the case progressed. But it doesn't change the fact that what the real allegation involved here is the allegations attack the choice of the materials that are being used to create the product. In other words, the problem in this case is with the design. It's not saying that here is how the brakes should be for ceramic brakes and here's the problem with this car because it doesn't meet that standard. What it's saying is these materials that are being used are being used in such a way that all of the brakes have the same problem. That takes it out of express warranty, and the law is really very clear on that. I'll go briefly to the implied warranty claim. Again, the implied warranty of mercantility. In California, that implied warranty involves the product must be in a safe condition and substantially free of defects. With automobiles, the law has been developed very well over the years. It's not that the manufacturer or the seller has to have a perfect car in every detail, but it has to be reasonably suited for ordinary use. The troop case that we cited, I think, is very important because it talks about that the breach of implied warranty comprises of vehicle safety, rendering it inoperable, drastically reducing mileage, in other words, significant defects. Well, safety is its own thing, correct? That's right. Safety is a main component. Safety, comma, all the other things. Correct. So here the argument, and it may turn out that it has nothing that would really rise to the level of safety, but there is a safety allegation made. So why does that get dismissed at the motion-to-dismiss stage? There's significant legal authority talking about what it takes to make the proper allegation for that. And I think probably the best example, and in fact it was cited by plaintiff, is the Brand case, B-R-A-N-D. And that's the case that you refer to. That's the sunroof case. Exactly. And the same type of allegations are being used here to say that there is a distraction for the driver and the allegations are made even to third parties. But if you look carefully at Brand, it's talking about real-world things. It's talking about an event that happened to this particular individual. He was driving the car. He had papers in the front seat. The window opened unexpectedly. He had no idea it was going to open. It opened. The wind came down, blew the papers. It got in his way. He had to actually pull off the road because he thought it was a dangerous situation. That's a real event. Well, you don't have to go too far on that because I would hope under a safety allegation you don't have to wait for the death knell to occur before you can actually sue on a safety violation. That's true. But I think the point that Brand made was that this wasn't conjectural. It wasn't hypothetical. It was an event. The thing that bothered me about the district court's analysis of the Brand case was he ended it with the sentence that this alone without more. But he didn't really say what the more would be or what the standard more would be. And for all we know, this case could be the more. It could also have the more. But we don't know because we haven't developed the facts yet in this case. And that goes back to your express warranty argument as well because we don't know whether your client has a suitable design in place. We don't know if the manufacturing process somehow deviated and ended up creating this situation where some noise is louder than other noise or it occurs at various different times in the ownership of the car. And there's just no real record here to really say there's not a claim alleged. Your Honor, there are many cases that have determined this at this juncture. And there is no allegation of deviation. It talks about the materials, but it does not talk about deviation because it applies to all vehicles. In fact, one thing that caught my attention in regard to that was it almost has to relate to all vehicles because this is a class action with commonality requirements. I mean, this is not an individual. You haven't even gotten there yet. We don't even know whether this is sustainable as a class action. You haven't even gotten to that stage yet. That's true. But there is a certain issue that has to be met at this juncture. The brand case, I think, is important also because it displays another feature, I think, that's important if you're going to make an allegation of some kind of a situation that creates a distraction. I think a key thing that the court, I think, recognized in its order was that there's a difference between something that is a complete surprise scenario. I mean, this individual did not know that that sunroof was going to be opening and closing. I mean, the allegations in this complaint are very clear. They're saying that when they put on the brakes, it squeaks. This is not something that would surprise an individual or cause a distraction because it's something that that's what the brakes do. But they don't do it all the time. They do it according to the allegations most of the time, but not all of the time. I agree with that. And I guess, well, I'm rereading brand here and I'm just trying to fit your argument into it because they talk about the element of surprise. But I don't know if we have a case that says, well, you need like a first-time surprise to cause the problem or if there's multiple surprises but not a surprise every time. I'm not quite sure under California law where the line is drawn because you always have these cases like a brand which, you know, that you could say, wow, that's really amazing that that happens. But the case doesn't really suggest that's the only kind of surprise that would qualify as a baseline allegation. Is there another case we should be looking at that incorporates this implied warranty surprise issue? Well, I think Grudzicki, which was raised by the plaintiff, shows a situation where the element of surprise is involved where the window was going up and down. And they said there was actually a safety violation there because it was, again, unknown. You didn't know when it was going to happen. And things could obviously fly into the car, so it was a safety defect. But we don't have that situation. The brakes are on the outside, and this is something that could be recognized. You know, we can't lose focus, I think, Your Honor, on what was disclosed, taken under judicial notice by this court. And if you bear with me, I'd just like to read that again. This is on excerpts of Record 100. This was in the owner's manual. Well, it says, the owner's manual says that braking may be associated with louder function noises, particularly in wet conditions, just before the vehicle comes to a stop. I'm just wondering, what exactly does that mean? Well, I think it means, I think a fair reading of that means, Your Honor, louder noises. Your brakes are going to make loud noises. Functioning, I would think, logically is just when using them, you're going to have louder noises. I don't personally think it's... associated with louder function noises. Yes. Yes, it may be. And I think the language before that is important, because it talks about why. It says, the high-performance braking system has perforated carbon ceramic brake discs and is designed for use on racetracks. Due to the properties of these materials used, braking may be associated with the louder And then it says, of course, it has no effect on the performance and operational reliability. That's exactly the point. These brakes are made exactly to be made the way they are. It's not technically defective. And that's an important component to what we're dealing with here. If I could, I know I'm running out of time, just to talk to the UCL issue. The law in this circuit is really crystal clear and has been so for about 12 years since the Doherty decision. And that is that the rule is that a manufacturer has no general duty to disclose information absent, one, an affirmative misrepresentation, or two, a safety issue. This just is not a situation that this rule applies. The affirmative misrepresentation, as I said at the beginning of my remarks, doesn't exist. No one can say that what was said is misrepresented. And second, in my view, and I think we have a lot of authority to support that in our brief, the allegations here do not touch on a safety issue. So if I agree with you on the duty to disclose, but if we were to disagree with you on the implied warranty, which I think is predicated on safety, would that necessarily put it in the same box as the UCL safety issue? Or is there something else to distinguish it? I think it does rather do that. I think the safety issue does cross both angles. There's no doubt about that. And so in order to, I suppose, excise the safety issue from the pleadings, in your view they simply haven't pled enough with respect to safety? Would you have to show a particular, you know, occurrence of a safety hazard? Or what do you think needs to be shown? I would argue they have not pled a safety issue per se. The Williams case is a good case to look at that talks about when you talk about hypotheticals and conjecture and you're really not, in other words, you're working, trying to really work to get the facts out there and it doesn't exist. That's what's happened here. As Your Honor has said, this thing morphed from the beginning of the cases where they're talking about inherent defects and it morphed to try to comply. That's what these complaints reflect. They reflect an attempt to try to fit in. And to be perfectly honest with you, the allegations just simply don't. Thank you. Thank you. You've used your time.  Thank you, Your Honor. Quickly, there is failure to perform. The defense wants to decide that the brakes, the way they're making noise, are performing as they wish, therefore there is no failure. It's just like the radio analogy. If the radio plays music but then randomly goes loud, it could do both. It could perform to the extent they designed it, but it could also exhibit a defect. And then the intentional misrepresentation, there is intentional misrepresentation because there is an omission of a material fact and there is a concealment of that fact. Of what fact? The fact that the brakes make noise. I thought we just read the Owner's Manual. I thought we just read the Owner's Manual that tells you that's going to happen. Yes. Let me refer to that. The Owner's Manual was not online and was not available for consumers to read it. We have a printout, I believe, in our exhibit, which we're going to use later, that the Owner's Manual was not online. They put it online after this lawsuit. And just like Your Honor referred to, the fact that when you read this line, it's not clear. And, in fact, there is a bulletin that BMW issued. So you're saying it doesn't, at the time of purchase, you don't get an Owner's Manual back then? You get it after you buy it. You sign and then they give you with the paperwork. But it's not online for you to go read it. And the Owner's Manual itself is not clear, and this is why they had to issue a service bulletin that explains to their own people what that Owner's Manual means, what that line means. So if their own people cannot understand what that supposed disclosure is, how is my client supposed to understand? Thank you. Thank you, Your Honor. Thank you both for your arguments this morning. The case just argued is submitted.
judges: McKeown, Wardlaw, Quist